Vannah KROMAH, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–08–00412–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 3, 2009.

Discretionary Review Refused
July 1, 2009.

Nicole Wignall Deborde, Houston, for appellant.

Alan Curry, Houston, for state.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

A jury found appellant, Vannah Kromah, guilty of aggravated robbery and assessed punishment at twenty-five years' confinement. The trial court sentenced appellant accordingly and entered a deadly weapon finding in the judgment. In two issues, appellant argues (1) the evidence was factually insufficient to establish his identity as the perpetrator of the robbery and (2) the trial court lacked authority to enter the deadly weapon finding. We overrule appellant's first issue, sustain his second issue, reform the judgment accordingly, and affirm the judgment as reformed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sometime before 11:30 a.m. on March 20, 2007, eighty-seven-year-old Conrado Staromana was in his front yard when a young, African–American male grabbed him from behind. The assailant put a knife against Staromana's neck and demanded the keys to the car parked in Staromana's driveway. The car belonged to Staromana's granddaughter, Katrina Quejada, and the assailant forced Staromana into the house to Quejada's bedroom, where Quejada was still in bed. Quejada saw the assailant, whom she later identified as appellant, standing behind Staromana with his arm around Staromana's neck, choking Staromana until his face was turning blue. Appellant said, "I'm going to kill this man if you don't give me your keys." Quejada got out of bed and pretended to retrieve her keys, but grabbed a stun gun and ran outside the house.

Quejada's keys were in her purse on a bedside table. Appellant pushed Staromana to the floor, took Quejada's purse, and left the house. Staromana followed. Staromana and Quejada then struggled with appellant as appellant unlocked the car door and entered the car. During the struggle, appellant repeatedly punched Quejada and knocked Staromana to the ground, causing him to suffer a gash to the back of his head.

A neighbor, Kimberly Kennedy, who was driving down the street with her daughters, saw the struggle and heard Quejada screaming for help. Kimberly parked behind Quejada's car to block appellant's exit. Kimberly recognized appellant as someone who had been at her house, and Quejada heard Kimberly say, "Poo, what are you doing?" Appellant ignored Kimberly, backed into her car, pulled forward, and drove through the grass to escape. Kimberly's seventeen-year-old son, Myles, came out of their house and also saw the struggle.

Harris County Deputy Sheriff Michael Nelson responded to the scene and talked to the witnesses. Nelson testified one of Kimberly's two daughters told him the assailant's street name was "Poo." Kimberly did not provide the name. At the time the daughter gave Nelson the name, "Poo," the witnesses were standing together.

The following day, appellant was stopped in Quejada's car seven or eight miles from Quejada's and Staromana's home. Sergeant Robert Tonry of the Harris County Sheriff's Department investigated the robbery. After appellant was apprehended, Tonry prepared a photographic array containing appellant's photograph. When Tonry showed the array to Quejada, Kimberly, and Myles, they identified appellant as the robber, doing so with varying levels of certainty. Staromana did not identify appellant.

According to Tonry, when Kimberly identified appellant's photograph, she said, "That's Poo." Then she said, "No, it's not Poo. That's somebody that's been over at my house one time." Finally, she said words to the effect of, "Well, maybe it's Poo." In Kimberly's written statement to Tonry, the assailant's name appeared as "Poo," but Kimberly denied having called the assailant "Poo," because, although she knew the assailant, she did not know his name. Myles explained that "Poo" is Terrence Miller, a person who looks "a little bit" like appellant.

A grand jury indicted appellant for aggravated robbery, with Staromana's age as the aggravating factor. The indictment also included allegations appellant had used and exhibited two deadly weapons, specifically hands and a knife.

Trial was to a jury. When appellant was arraigned at the beginning of trial, the court did not read the deadly weapon allegations.

At trial, Quejada testified she was "one hundred percent certain" appellant was the robber. Kimberly testified she was "positive" appellant was the robber. In court, Myles refused to point to appellant as the person he saw on March 20, 2007. He did identify appellant as the person he had identified in the photographic array. Myles testified he did not want to be involved in the investigation because he feared retaliation.

Appellant did not testify, but presented an alibi defense through Dallas civil litigation attorney, Lui Akwurouha, who represented appellant in a Harris County court on another felony case on March 20, 2007. Akwurouha testified he picked appellant and appellant's mother up near a gas station just before 9:00 a.m. on March 20. They arrived at the courthouse after docket call, around 9:30 a.m. or 9:40 a.m., and were there until 11:30 a.m. or 11:40 a.m. Akwurouha was with appellant and his mother until sometime after noon, when he dropped them at their car.

In rebuttal, the State called Assistant District Attorney Tiffany Dupree, who handled appellant's case on March 20. Akwurouha approached Dupree to see whether the case could be reset before the docket call so he and appellant could be excused before the docket call. Dupree testified the case was reset as soon as the docket was called around 9:20 a.m. or 9:25 a.m. After the case was reset and before noon, Dupree spoke with Akwurouha and asked him whether they could resolve the case that day. Akwurouha told her they could not resolve it because appellant had already left.

The jury found appellant guilty as charged in the indictment. The application paragraph of the jury charge did not contain a reference to a deadly weapon, and neither the guilt/innocence charge nor the punishment charge contained a deadly weapon special issue. The trial court, however, included a deadly weapon finding in the judgment.

## II. DISCUSSION

### A. Factual Sufficiency of the Evidence

In issue one, appellant challenges the factual sufficiency of the evidence. In

examining a factual sufficiency challenge, we view all evidence in a neutral light and set aside the verdict " 'only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.' " *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997) (quoting *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim. App.1996)). Before we may reverse for factual insufficiency, we must first conclude, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App.2006). As the court of criminal appeals recently explained:

> Both legal and factual sufficiency standards require the reviewing court to consider all of the evidence. "The difference between the two standards is that the former requires the reviewing court to defer to the jury's credibility and weight determinations while the latter permits the reviewing court to substitute its judgment for the jury's on these questions 'albeit to a very limited degree.' " In reality, a "factual-sufficiency review is 'barely distinguishable' from a *Jackson v. Virginia* legal sufficiency review."

*Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Crim.App.2007) (citations omitted).

■ Appellant does not dispute the sufficiency of evidence on the elements of aggravated robbery. Instead, he argues the evidence was insufficient to prove he was the person who committed the offense. Identification of the defendant as the person who committed the offense charged is part of the State's burden of proof beyond a reasonable doubt. *Miller v. State*, 667 S.W.2d 773, 775 (Tex.Crim.App.1984).

The day after the robbery, appellant was stopped in Quejada's car. Within two days after the robbery, eyewitnesses Quejada, Kimberly Kennedy, and Myles Kennedy selected appellant's photograph as depicting the person who committed the robbery.[1] Quejada and Kimberly identified appellant in court, and Myles identified appellant in court as the person he had selected from the photographic array. The testimony of a single eyewitness can be factually sufficient to support a felony conviction. *Johnson v. State*, 176 S.W.3d 74, 78 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd); *see Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982). Appellant, however, contends the following three aspects of the evidence render it factually insufficient to support his identity: (1) identification of the perpetrator as "Poo"; (2) purportedly tainted and tentative identifications; and (3) alibi evidence.

***Identification of the perpetrator as "Poo."*** Myles testified "Poo" was the street name for Terrence Miller, a person who looks "a little bit" like appellant, but is not appellant. Appellant contends the following evidence shows Miller was the robber and therefore renders the evidence factually insufficient to establish that appellant committed the robbery: (1) Quejada's testimony indicating Kimberly called the robber "Poo"; (2) inclusion of Poo's contacts on the initial offense report; (3) Kimberly's initial statement, "That's Poo," when she saw appellant's photograph; (4) Myles's statement to Tonry that "Poo" was the robber; and (5) identification of the robber as "Poo" in Kimberly's written statement to Tonry.

Myles and Kimberly Kennedy were the only two trial witnesses who arguably

---

**1.** Another person, Eric Thomas, was in the passenger seat of Quejada's car when the police stopped it, and the investigating officer included Thomas's photograph in a separate array shown to the eyewitnesses. None of them identified Thomas.

knew, or knew of, someone named "Poo" before the robbery. The jury heard the following evidence from them indicating "Poo" was not the robber: (1) Myles testified he had learned Miller (Poo) was in jail at the time of the robbery; and (2) Kimberly repeatedly denied knowing the robber's name and having called the robber by "Poo," but testified only that she knew the robber from having seen him before and had said, "I know you" when she encountered him on March 20. In support of Kimberly's testimony, Officer Nelson testified that Kimberly did not provide him with the name of "Poo."

***Purportedly tainted and tentative identifications.***[2] Appellant next faults the photo array identifications. He observes that Staromana did not identify appellant's photograph, Quejada was only sixty percent sure, and Kimberly was only seventy percent sure. He further discredits the in- and out-of-court identifications on the ground that witnesses who had identified the perpetrator as "Poo" at the time of the robbery changed their positions at trial.

The jury, however, also heard the following evidence: (1) Staromana had glaucoma and blurred vision and did not see the robber's face, thus explaining his inability to identify appellant, (2) Myles did not attach any degree of uncertainty to his photographic identification, and (3) Kimberly and Quejada positively identified appellant at trial. Significantly, Quejada had a full facial view of appellant when he was in her bedroom, was able to get a clear view of him in daylight, and had never identified the robber as "Poo."

***Appellant's alibi evidence.*** Finally, appellant points to alibi evidence presented by attorney Lui Akwurouha, who represented appellant in court on an unrelated case on March 20, the day of the robbery. According to Akwurouha's testimony, appellant was with Akwurouha from just before 9:00 a.m. until after noon on March 20, when they parted at the gas station where appellant's mother had left her car.

The State, however, impeached Akwurouha's testimony with that of Tiffany Dupree, the assistant district attorney who handled appellant's case. According to Dupree, she was unable to resolve the case on March 20 because, when she approached Akwurouha that day, Akwurouha told her appellant had already left the court. Additionally, Dupree impeached Akwurouha's testimony on whether appellant and Akwurouha had arrived in court after the docket call and on how Akwurouha had arrived from Dallas. Finally, the jury heard testimony that Akwurouha had been a friend of appellant's family for over ten years. The jury was free to disbelieve appellant's alibi testimony and credit the testimony of the eyewitnesses.

In sum, all of appellant's complaints relate to the credibility and weight of the evidence establishing appellant's identity as the robber. "A jury's decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State." *Johnson,* 176 S.W.3d at 78. Given the very limited degree by which, in a factual sufficiency review, we may substitute our evaluations for that of the jury on weight and credibility determinations, we decline to do so here. *See Rollerson,* 227 S.W.3d at 724. We cannot

---

**2.** Although appellant describes the identifications as "tainted," he does not set forth any impermissible aspect of the identification procedure. The trial court held hearings on the photographic array identifications by Queja-da, Kimberly, and Myles. The trial court overruled appellant's objections, and appellant does not challenge these rulings on appeal. Appellant appears to tie the taint to Kimberly's and Myles's references to "Poo."

conclude the great weight and preponderance of the evidence contradicts the jury's verdict. *See Watson,* 204 S.W.3d at 417. Accordingly, we overrule appellant's first issue.

## B. Deadly Weapon Finding

In issue two, appellant argues the trial court erred in entering a deadly weapon affirmative finding in the judgment. When, as here, the jury is the factfinder, the trial court may not enter a deadly weapon finding unless the jury made an express finding of a deadly weapon. *Lafleur v. State,* 106 S.W.3d 91, 92 (Tex.Crim.App.2003). As this court explained in *Sanders v. State:*

> Since *Polk,* it has been very well settled that in a jury trial, a trial court is authorized to enter a deadly weapon affirmative finding in three situations: where the jury has 1) found guilt as alleged in the indictment and the deadly weapon has been specifically plead[ed] as such using "deadly weapon" nomenclature in the indictment; 2) found guilt as alleged in the indictment but, though not specifically plead[ed] as a deadly weapon, the weapon plead[ed] is per se a deadly weapon; or 3) affirmatively answered a special issue on deadly weapon use.

25 S.W.3d 854, 856 (Tex.App.-Houston [14th Dist] 2000, no pet.) (citing *Polk v. State,* 693 S.W.2d 391, 396 (Tex.Crim.App. 1985)), *pet. dism'd as improvidently granted,* 56 S.W.3d 52 (Tex.Crim.App.2001) (per curiam).

When, as in cases involving a finding of guilt on a lesser included offense, the jury's verdict does not include a finding of guilt "as charged in the indictment," a court may look to the application paragraph for the lesser included offense. *Lafleur,* 106 S.W.3d at 92. If the deadly weapon allegation in that portion of the jury charge matches the deadly weapon allegation in the indictment for the charged offense, the trial court may enter a deadly weapon finding in the judgment based on the jury's verdict of guilt on the lesser included offense. *Id.* What the trial court may not do is enter a deadly weapon finding on an implied finding. *See Polk,* 693 S.W.2d at 396; *Sanders,* 25 S.W.3d at 856.

In the present case, the jury found appellant "guilty of aggravated robbery, as charged in the indictment." The State points to two paragraphs of the indictment, one containing an allegation appellant had used and exhibited a deadly weapon, specifically hands, and the second containing an allegation appellant had used and exhibited a deadly weapon, specifically a knife. The State then reasons the first *Polk/Sanders* situation is present and the trial court was authorized to enter a deadly weapon finding.

The State's reasoning, however, overlooks the fact that the aggravating element in the charged offense was not use of a deadly weapon, but Staromana's age. Thus, when appellant was arraigned before the jury, the deadly weapons allegations (hands and knife) were not read. The application paragraph of the jury charge did not refer to a deadly weapon. There was no deadly weapon special issue in either the guilt/innocence or the punishment charge. In short, the jury never had a deadly weapon issue before it. Under *Polk* and its progeny, we cannot conclude the jury made an express affirmative finding of a deadly weapon. Accordingly, we sustain appellant's second issue.

## III. CONCLUSION

Having sustained appellant's second issue, we order the affirmative deadly weapon finding struck from the judgment and reform the judgment by deleting the im-

proper finding. *See Sanders,* 25 S.W.3d at 857. Having concluded the evidence was factually sufficient and having overruled appellant's first issue, we affirm the judgment as reformed.