**Affirmed and Memorandum Opinion filed August 9, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00525-CR

---

**JORGE ORTEGA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 8
Harris County, Texas
Trial Court Cause No. 1943959**

---

## M E M O R A N D U M   O P I N I O N

Appellant Jorge Ortega challenges his conviction for harassment. Appellant asserts (1) the evidence is legally insufficient to support his conviction, and (2) he received ineffective assistance of counsel. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Charged by information with the offense of harassment by causing the complainant's telephone to ring repeatedly with the intent to harass and annoy her, appellant pleaded "not guilty." At trial, the State presented evidence that appellant and the complainant began dating in January 2013. According to the complainant, their relationship seemed normal, but, after a few months, appellant became "very clingy and jealous." The complainant testified that "he always had to know where I was or what I was doing at all times. If I didn't answer the phone or if I didn't text him back fast enough, I would get in trouble . . . or yelled at." The complainant further testified that appellant "wanted to have all control over me . . . I had to depend on him for everything." Appellant talked the complainant into putting her paychecks into his account, and forced the complainant to ask for money to make purchases.

Whenever the complainant tried to end their relationship, appellant threatened to kill himself. The complainant's attempts to end the relationship proved unsuccessful, never lasting more than a day. According to the complainant, appellant would get jealous, would want to know where she was at all times, and even began waiting outside her work place and a friend's home where she babysat. The complainant began taking anxiety and sleeping medication; she would check her shower, or anywhere else she thought someone could hide, for fear that appellant would be in her house.

In December 2014, the complainant decided to end the relationship. On a trip to church, she hit the car window after pulling off her seatbelt. Appellant grew angry and ordered the complainant to wait outside. The complainant told appellant she was ending the relationship. Appellant sent the complainant "love quotes," called her many times a day, and told her that she would regret not getting back

together with him.

The jury found appellant guilty of the charged offense. The trial court assessed punishment at 180 days' confinement, probated for eighteen months, and a $1,500 fine.

## I. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction for harassment. *See* Tex. Pen. Code Ann. § 42.07 (West 2011). Specifically, he argues the State never identified him as the defendant.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We may not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We draw all reasonable inferences from the evidence in favor of the verdict. *Id.*

The State has the burden of proving the appellant is the person who committed the offense charged. *See Mayo v. State*, 238 S.W.2d 777 (Tex. Crim. App. 1951); *see also Kromah v. State*, 283 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). The test for the sufficiency of an in-court identification is whether we can conclude "from a totality of the circumstances the jury was adequately apprised that the witnesses were referring to appellant."

*Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. [Panel Op.] 1981); *see also Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984) (noting that although *Mayo* establishes the proper burden on the State to provide appellant committed the offense charged, it is the totality of the circumstances by which we measure the sufficiency of such proof).

We conclude the record evidence is sufficient to establish that appellant was the "Jorge Ortega" charged with harassing the complainant. During arraignment, and in the presence of the jury, appellant was "hereafter styled 'the Defendant.'" Following arraignment, the complainant identified appellant in testimony:

> [Prosecutor]: Do you recognize the Defendant in this case?
>
> [Complainant]: Yes.
>
> [Prosecutor]: Can you identify him by an article of clothing that he's wearing?
>
> [Complainant]: A white shirt.
>
> [Prosecutor]: Your Honor, let the record reflect that the witness has identified the Defendant.
>
> [The Court]: Yes.
>
> [Prosecutor]: How do you recognize the Defendant?
>
> [Complainant]: That's my ex-boyfriend.

The following day, the complainant's mother also identified appellant:

> [Prosecutor]: Do you recognize the Defendant in this case?
>
> [Complainant's mother]: Yes, ma'am.
>
> [Prosecutor]: And can you identify him by an article of clothing that he's wearing?
>
> [Complainant's mother]: Yes, ma'am, a hot pink T-shirt.
>
> [Prosecutor]: Your Honor, let the record reflect that the witness has identified the Defendant.
>
> [The Court]: Yes.

4

[Prosecutor]: How do you recognize him?

[Complainant's mother] He used to date my daughter.

The witnesses' identifications were uncontroverted. The trial court took judicial notice that the witnesses had identified Appellant. Appellant was the only defendant on trial. Looking at the totality of the circumstances, the identification evidence is sufficient for the jury to have concluded that the witnesses were referring to appellant. *Miller v. State*, 667 S.W.2d at 776 (Tex. Crim. App. 1984); *Rohlfing*, 612 S.W.2d at 601; *Purkey v. State*, 656 S.W.2d 519, 520 (Tex. App.—Beaumont 1983, pet ref'd) (noting that *Rohlfing* does not require a ritualist identification; it requires that the totality of the circumstances adequately apprise the jury that the witnesses are referring to the appellant). We overrule appellant's first issue.

## II. INEFFECTIVE-ASSISTANCE-OF-COUNSEL ANALYSIS

In his second issue, appellant claims trial counsel provided ineffective assistance of counsel. Specifically, appellant argues that counsel was ineffective by (1) making inflammatory remarks during voir dire, (2) failing to request notice of prior bad acts, (3) failing to object to allegedly inadmissible and prejudicial evidence, (4) failing to request limiting instructions related to evidence under Texas Rule of Evidence 404(b), and (5) failing to adequately investigate and present evidence supporting appellant's sole defense.

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.051 (West 2015). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective-assistance claim, appellant must prove (1) counsel's representation fell below the

5

objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's deficiency the result of the proceeding would have been different. *Id.* at 687, 694; *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). To establish the first prong, the appellant must prove by a preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms. *Hernandez*, 726 S.W.2d at 78.

Ineffective assistance of counsel prejudices a criminal defendant if there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). In determining whether an appellant has been prejudiced by counsel's deficient performance, the court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. But, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

Appellant raised his allegations of ineffective assistance of counsel through a motion for new trial. The trial court conducted a hearing and denied the motion.

## 1. Voir Dire

Appellant contends counsel was ineffective because he made inflammatory comments during voir dire. To support this contention, appellant points to the following exchange between his counsel and a prospective juror:

6

[Defense Counsel]: And why am I picking on you, Juror No. 1?

[Prospective Juror]: Why?

[Defense Counsel]: Is your birthday October 21st?

[Prospective Juror]: Yes.

[Defense Counsel]: You share that with my aunt who has the same birthday as Kim Kardashian. Are there three sex tapes out there or—

[Prospective Juror]: I don't know.

[Defense Counsel]: I aim to make it as pleasant as possible.

Appellant contends this comment damaged his cause and cannot be seen as reasonable trial strategy. He relies exclusively on *Miller v. State*, a case in which this court held trial counsel's inflammatory comments, including those made during voir dire, constituted ineffective assistance of counsel. 728 S.W.2d 133, 134–135 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). In *Miller*, the defense counsel appeared to have deliberately angered the jurors. *Id.* During voir dire, counsel not only accused a prospective juror of attempting to avoid jury duty, but also refused to allow the juror to respond to this accusation. *Id.* Moreover, during jury argument, counsel made several racial remarks that were likely to inflame the jury. *Id.* at 135. This court found that these comments, taken collectively, amounted to ineffective assistance of counsel. *Id.* In today's case, appellant's trial counsel's remark fails to rise to level of offensiveness demonstrated in *Miller*.

Though appellant questioned defense counsel at the hearing on his motion for new trial, appellant raised no questions concerning defense counsel's conduct during voir dire, the record contains no evidence from which we can ascertain counsel's motivation or reason for making this comment, and we decline to speculate. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). *See also Bone v. State*, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002) (holding that

7

appellate courts may not reverse a conviction on ineffective-assistance-of-counsel grounds when counsel's actions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions). "Nothing in the record proves that counsel's voir dire was the product of an unreasoned or unreasonable strategy, or that there was a fair probability that it led to either an unreliable guilty verdict or unjust punishment." *Id.* at 834. Furthermore, counsel ordinarily should be accorded an opportunity to explain counsel's actions before being condemned as unprofessional. *Id.* at 836. Appellant's trial counsel did not get that opportunity. We conclude that appellant has failed to satisfy the first prong of the test for ineffective assistance of counsel. *Hernandez*, 726 S.W.2d at 78.

## 2. Prior Bad Acts

Appellant contends trial counsel provided ineffective assistance by failing to request notice of prior bad acts the State intended to introduce during trial. During the hearing on the motion for new trial, appellant asked if counsel recalled "from trial there being many prior bad acts discussed by [the complainant] such as [appellant] sitting out in front of her residence," "sitting out in front of the place where [the complainant] babysat," and "sitting out in front of her mom's work over numerous time periods" to which counsel stated he did. But, these acts are not evidence of a "crime, wrong, or other act" prohibited under Texas Rule of Evidence 404(b).

Specifically, the prohibition against "other acts" evidence typically refers to evidence that is extrinsic to the crime charged and introduced solely for the purpose of showing propensity. *Worthy v. State*, 312 S.W.3d 34, 39 n.21. (Tex. Crim. App. 2010). Texas Rule of Evidence 404(b) only applies to limit the admissibility of evidence of extrinsic acts. *Id.* "Intrinsic evidence, on the other

hand, is generally admissible so that the jury may evaluate all the circumstances under which the defendant acted." *Id.* (internal cites and quotation marks omitted).

We do not reach the question of propensity. The "prior bad acts" of which appellant complains are acts intrinsic to the harassment at issue. The evidence, therefore, comprises "part and parcel" of the charged offense and is not "other acts" evidence at all. As such, Rule 404(b) is not implicated. *Id.* (citing *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002)). Accordingly, we conclude that appellant failed to satisfy the first prong of the test for ineffective assistance of counsel.

### 3. Allegedly Inadmissible and Prejudicial Evidence

Appellant contends trial counsel provided ineffective assistance by failing to object to allegedly inadmissible and damaging evidence. Specifically, appellant points to "prior bad acts," some of which he claims are in the form of inadmissible hearsay, given during the complainant's testimony. The complainant testified as follows:

(1) [Appellant] became very clingy and jealous. I couldn't hang out with my friends. I didn't ever see my friends, only at work. When I had a lunch break and he was there, I had to eat lunch with him. Me and my mom are really close and I didn't get to see her a lot. I always—he always had to know where I was and what I was doing at all times. If I didn't answer the phone or if I didn't text him back fast enough, I would get in trouble or, like, get yelled at. It was just mentally kind of hard to deal with.

(2) [E]very time I had free time, I had to spend it with him if he was—he had free time as well."

(3) [Appellant] would call me repeatedly or text me or message me on Facebook, text me, call me over and over again, text me until I answered the phone.

(4) [Appellant] wanted to have—I felt like he wanted to have all control over me, like, mentally, physically, anything, like he wanted

to take—like I had to depend on him for everything. He wanted me to depend on him for everything.

(5) [Appellant] talked me into start [sic] putting my paycheck into his account. And so when I got paid, I started having my paycheck going into his account so it was to save money to go do other things and he would only give me money when I had to pay a bill. If I needed something, like, needed gas or anything, I had to ask him for it. So, if he wanted me to give me [sic]to get a certain amount of gas, so I could only go certain places. [sic]

(6) [Appellant] got jealous of the kids I babysat.

(7) [Appellant] didn't like me taking the kids—the kids I babysat—he didn't like me taking them to school. He thought they should be taking the bus. He didn't like me taking them places, doing anything with them.

(8) If I would try to go on a break, he would say that he was going to kill himself. He even told me one time that his neighbor had to talk him out of not killing himself because we wanted to take a break.

(9) I went to church with [appellant] and I pulled my seatbelt off and it hit the window right there and he started getting mad, so I got out of the car and started walking towards the church. He goes, 'No, you are not allowed to come in here. You can wait outside until I am done.'

Appellant contends all the testimony above consists of "prior bad acts" prohibited under Rule 404(b). As noted above, these acts are not "crimes, wrongs, or other acts" prohibited under Rule 404(b), but rather admissible intrinsic evidence "part and parcel" to the charged offense. *Id.* Therefore, Rule 404(b) was inapplicable and counsel was not ineffective for failing to object to this testimony. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (holding counsel was not ineffective for failing to object to admissible evidence).

Appellant further contends that the evidence of "bad acts" concerning appellant sitting outside the complainant's home, work, and her mother's work were not only inadmissible prior bad acts under Rule 404(b), but were admitted via inadmissible hearsay. Appellant points us to the following testimony:

10

[Prosecutor]: During the end of your relationship, would the Defendant sit outside your work?

[Complainant]: Yes.

[Prosecutor]: How do you know this?

[Complainant]: Because we have security cameras. I work at a bank and where it is located, we have security guards that drive around. They would come and tell me because I would forewarn them of what was going on. They would let me know to not leave right now, that someone [sic] outside or my manager would walk me out to my car because he would walk around to make sure to see what was going on.

The complainant further testified:

[Prosecutor]: At [the] time that you are getting . . . text messages, are you still being told that the Defendant is still outside of your work?

[Complainant]: Yes.

Q: Sitting outside of your mother's school?

[Complainant]: Yes.

[Prosecutor]: Can you tell us a little bit about how he was sitting outside of your mother's school?

[Complainant]: He would sit outside in the back parking lot where only the teachers can park and it is facing the principal's office. The secretary noticed going out there and they knew what was going on because my mom informed them as well. Thankfully, me and my mom had left because of what was going on. She wanted me to try to relax, so we were not there at the time. But they told me that it was him out there, because he actually works for the school district and they knew it was his car.

Regarding the home where the complainant worked as a babysitter, the complainant testified:

[Prosecutor]: At this home, would he ever show up there unannounced?

[Complainant]: Yes.

[Prosecutor]: What would he do?

11

[Complainant]: He would sit outside or call me because he wouldn't come inside . . . [s]o he would sit outside and call me and tell me to come outside or the kids would tell me he was sitting outside after we had broken up . . . [b]ut afterwards, he would sit out there and they would call me, '[complainant], do not come over here. He's sitting outside here.'

Hearsay is a statement, other than one made by the declarant while testifying, offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Out-of-court statements need not be directly quoted to implicate the hearsay rules. *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999). The complainant testified that appellant would sit outside the home where she babysat. The complainant was made aware of appellant sitting outside her work and her mother's work, at least under the testimony above, via hearsay. At the hearing on the motion for new trial, trial counsel testified:

[Prosecutor]: Do you recall during the testimony of [the complainant] . . . her learning of the Defendant sitting outside of her work or sitting outside her mother's work; that that was learned through hearsay?

[Trial Counsel]: Ugh—

[Prosecutor]: She didn't actually personally observe that?

[Trial Counsel]: Right. It was learned through hearsay.

[Prosecutor]: Do you recall objecting to hearsay at trial?

[Trial Counsel]: I don't.

While counsel testified about the hearsay nature of certain evidence, the record contains no explanation for counsel's conduct. In the absence of evidence of counsel's reasons for the challenged conduct, we "will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). The testimony in issue included only the circumstances surrounding the complainant's relationship with appellant, and

12

the same evidence was admitted properly, without objection, through other testimony. When asked if she ever saw appellant sitting outside her work, the complainant testified "[y]es, I saw him drive around a few times." The complainant also testified that appellant would wait outside the house where she babysat and call her while he sat outside. When the complainant's mother was asked if appellant ever came to her school, she responded that he had. Therefore, the record contains non-hearsay evidence concerning appellant sitting outside the complainant's home, work, and her mother's work. Because appellant's ineffective-assistance-of-counsel claim is based upon cumulative evidence, it fails. *See Ingham v. State*, 679 S.W.2d 503 (Tex. Crim. App. 1984).

Sergeant Stanley of the Harris County Sheriff's Office also testified for the State. During his testimony, Sergeant Stanley stated that harassment cases "can lead to family violence and even cases of death . . . ." Appellant argues counsel should have objected to this testimony under Texas Rules of Evidence 401, 402, and 403.

During direct examination, the complainant's mother testified that "[appellant] became very possessive of [the complainant]. He didn't like her spending time with anybody, including myself. When we were together, he would call, text, want to know where she was, when she was going to be home. If she wasn't there, he would kind of get angry, get real angry with her—never was violent with her, but it was more of [sic] about emotional." The complainant's mother further stated that appellant showing up to the complainant's work place scared her. Appellant argues this testimony also violated Rules 401, 402, and 403.

During the hearing on the motion for new trial, trial counsel was not asked about this testimony or his failure to object to it. On a silent record, this court can find ineffective assistance of counsel only if the challenged conduct was "so

13

outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440. *See also Bone*, 77 S.W.3d at 830 (refusing to reverse on appellant's claim of ineffective assistance of counsel in the absence of evidence explaining counsel's decisions). We cannot conclude trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. Accordingly, we conclude that appellant failed to satisfy the first prong of the test for ineffective assistance of counsel.

### 4. Limiting Instructions

Appellant contends defense counsel was ineffective in failing to request a Rule 404(b) limiting instruction. Having concluded that no "crimes, wrongs, or other acts" prohibited by Rule 404(b) were admitted at trial, we conclude there was no basis to request a limiting instruction. *Worthy*, 312 S.W.3d at 39 n.21. Accordingly, appellant failed to satisfy the first prong of the test for ineffective assistance of counsel.

### 5. Alleged Failure to Investigate

Appellant contends trial counsel failed to adequately investigate the case and present certain evidence that appellant claims would have supported his sole defense and impeached the complainant.

Appellant was charged by information with the offense of harassment by causing the complainant's telephone to ring repeatedly with the intent to harass and annoy her, on or about January 19, 2014. Appellant argues his sole defense was that he called the complainant on January 19, not to harass her, but to inquire about the check he had written the previous day, worried she had not given the check to the car company.

In October 2013, appellant and the complainant together co-signed and

14

purchased a car for her to use. The complainant testified that she was the primary driver on the insurance and, except for the very first payment, made all the monthly payments.

The record evidence shows appellant wrote five checks, three on October 16, November 18, and December 18 of 2013, and the other two on January 18 and February 15 of 2014. The checks written in December 2013 and January 2014 were payable to the complainant and the rest were payable to "Nissan Motor Acceptance Corporation."

Appellant contends that trial counsel, by not offering the five checks into evidence, provided ineffective assistance of counsel since the jury received no evidence supporting his sole defense. Appellant also argues the checks would have impeached the complainant's statement that she had made all the car payments, other than the first one in October 2013. Appellant also directs us to a loan document purportedly proving that the January 18 check was not provided to Nissan until the 21st. Appellant argues trial counsel was deficient in not obtaining this document before trial. Finally, appellant argues trial counsel failed to introduce a complete record of the phone records introduced at trial. According to appellant, the State offered only a portion of the phone records and had trial counsel obtained a complete record, the evidence would have shown that the complainant called appellant 49 times between January 1 and January 14. Appellant argues this evidence would have disproven the idea that he was a "crazy stalker" that the complainant feared.

Counsel has the duty to make an independent investigation of the facts surrounding his or her client's case. *Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986). But, when counsel's questioned performance is based on sound trial strategy, we cannot find counsel ineffective. Appellant must overcome the

15

presumption that, under the circumstances, the challenged action might be considered reasonable trial strategy. *Strickland*, 466 U.S. at 689.

At trial, the complainant testified that appellant was controlling and talked her into putting her paychecks into his account. If she ever needed to pay for anything, she would have to ask him for it. Regarding the car payments, the complainant testified "when I had my money in his account, he would either write me a check and I would send it off or put it in my account and send it off or he would pay it because all of my money was in his account."

At the motion for new trial hearing, trial counsel explained:

> I think the State was trying to prove just that [appellant] had control of [the complainant's] finances; that he was a very controlling person, even though it is not relevant to the harassment part of the case. I think that my strategy was that if he was just giving her checks to pay for the car, he was using her money and controlling her money and I just didn't want to go there.

Appellant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. It is reasonable to conclude that had counsel introduced the checks into evidence, the checks would have supported, rather than contradicted, the complainant's testimony. *Strickland*, 466 U.S. at 689.

Regardless, "the existence of evidence that may support the conclusion that the call[s] had a facially legitimate purpose does not legally negate the prohibited intent or manner of the call." *Wilson v. State*, 448 S.W.3d 418, 425 (Tex. Crim. App. 2014) Thus, the document purportedly proving that the January 18 check was not provided to Nissan until the 21st also does not negate appellant's conduct.

In regards to the incomplete phone records, counsel was not provided an opportunity to explain why he did not seek or introduce a complete record of the phone calls made between appellant and the complainant. Absent an opportunity

for trial counsel to explain his actions, appellate courts should not find ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440. We could hardly conclude that trial counsel's failure to obtain and produce a complete version of the phone records was outrageous. Accordingly, we conclude that appellant failed to satisfy the first prong of the test for ineffective assistance of counsel. *Hernandez*, 726 S.W.2d at 78. We overrule appellant's second point.

Having overruled all of appellant's issues, we affirm the trial court's judgment.


/s/      Kem Thompson Frost
         Chief Justice


Panel consists of Chief Justice Frost and Justices McCally and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

17