

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00763-CR

Ronald Charles **WOOLRIDGE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR4822
Honorable Laura Parker, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed:  September 26, 2018

AFFIRMED

Ronald Charles Woolridge was convicted by a jury of aggravated robbery.  The sole issue presented on appeal is whether the evidence is legally sufficient to prove Woolridge's identity as one of the robbers.  We affirm the trial court's judgment.

### BACKGROUND

Deputy Juan Aldaco was dispatched to a location in response to a 911 call regarding an aggravated robbery.  Dispatch informed Deputy Aldaco that two males were involved, one Caucasian and one black, and the offense occurred in front of a residence as the two men tried to

steal a motor vehicle. When Deputy Aldaco arrived on the scene, the complainant told him the Caucasian male ordered her to exit her car at gunpoint, and he hit her in the face when she refused. The complainant provided Deputy Aldaco with a description of the two men which he broadcast over the radio. The complainant described the black male as having a dark complexion, wearing a gray hoodie and blue jeans, approximately five-eight or five-nine, about 150 to 160 pounds, short hair, no facial hair, and slim. Deputy Aldaco testified the complainant lived across from a school so the lighting was pretty good because of the lighting in the school's parking lot. Photographs of the location and the complainant's vehicle were introduced into evidence.

The complainant testified the lighting from the school illuminates through every window of her house facing the street; however, the dome light in her car was off, and no lights were on in the house. The complainant noticed a vehicle following closely behind her as she turned into her driveway, and a Caucasian male opened her driver's side door while she was gathering her things. The complainant estimated it was between 2:00 and 2:20 a.m. The complainant described the two men standing in her driveway and stated both were holding guns. The complainant testified she saw both men's faces completely when they tried to pull her out of her car by her leg. The complainant physically resisted being pulled from her car. The complainant testified she paid close attention to the details of the men's faces because she edits photography and videography. The complainant stated she was more angry than afraid. The complainant was able to pull her leg back and kick at the men. The Caucasian male then pistol whipped her on her knee and on her cheek bone and lip. The black male went around the car to the passenger side and tried to yank the complainant out through the passenger door by her arm. At the same time, the Caucasian male grabbed the complainant's pants under her belt loop and ripped her pants off. The complainant testified she was looking at the black male's face while he was trying to yank her from her car. The complainant stated she looked at the black male long enough to remember him. When the

complainant began honking her horn, the men ran behind her car, and she noticed a vehicle barricading the driveway but was unable to describe the vehicle. The complainant did not see the men get into that vehicle and did not see the vehicle drive away because she ran inside her house to call 911.

The complainant provided a statement to officers at the scene and provided an additional statement the following day. Approximately nine days after the offense occurred, the complainant identified the Caucasian robber from a photo line-up, and she similarly identified the black robber from a photo line-up approximately twenty-four days after the offense occurred. The complainant testified she was certain about the identification of the black robber although the man looked different in the photo line-up than at the scene. The complainant testified the man's hair in the photo was more bushy and messy, and his skin was a little darker in the photo, probably because of the lighting in front of her house. The complainant then identified Woolridge in the courtroom as the black robber and stated she identified him from her memory from the night of the offense. The complainant testified the features that triggered her memory were his eyes, nose, lips, chin, ears, and cheek bones.

On cross-examination, the complainant acknowledged she stated the photograph "looks like" the black robber when she was shown the photo line-up; however, on re-direct examination, she testified she was equally confident in identifying both robbers. On re-direct examination, the complainant also testified she was confident of her identification of Woolridge in the courtroom and would not testify if she was not.

Detective Reynaldo Salinas was assigned to investigate the offense. Detective Salinas admitted two statements given by the complainant were lost during the investigation. During the course of his investigation, Detective Salinas testified Woolridge became a suspect, and the complainant was shown a photo line-up from which she identified Woolridge's photograph as the

black robber. Detective Salinas acknowledged the complainant stated "number four looks like the black male involved in my ag robbery."

Woolridge testified he did not commit the aggravated robbery. Woolridge stated he was at home taking care of his seven-month-old daughter on the date of the offense. Woolridge testified he has had facial hair since middle school and had tattoos on his neck for several years. Woolridge admitted he previously had been placed on probation for burglary of a motor vehicle.

Investigator Mark Waits obtained the complainant's statement on the date of the offense which was recorded on his computer. Investigator Waits testified he provided a copy of the recording to Detective Salinas and no longer has the recording on his computer. Investigator Waits testified the complainant did not provide any specific identifying features of the robbers other than their race. Investigator Waits admitted the complainant's recorded statement had been lost or misplaced.

Calvin Anderson, the crime scene technician who processed the scene, identified the photographs he took at the scene which were admitted into evidence. Anderson testified it was pretty dark at the scene. Although Anderson was asked to take fingerprints, he did not obtain any because he was told the suspects only made contact with the door handle which did not have enough contact surface from which to obtain useable fingerprints.

Deputy Jorge Nan, a latent print examiner, testified he examined fingerprints subsequently taken from the complainant's car. Only two prints were legible, and no matches were found from those prints in the Automated Fingerprint Identification System which contains the fingerprints of anyone previously arrested for or convicted of a crime.

After hearing the evidence, the jury found Woolridge guilty of aggravated robbery, and the trial court assessed his sentence at ten years' imprisonment. Woolridge appeals.

## DISCUSSION

As previously noted, Woolridge's sole complaint on appeal is that the evidence is legally insufficient to support the jury's finding that he was the black robber, asserting the evidence of identity "is conflicting and very weak." Woolridge further asserts, "The whole case turned on the complainant's identification, and that identification does not warrant confidence."

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). "The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury." *Queeman*, 520 S.W.3d at 622. Instead, as a reviewing court, we must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Identification of the defendant as the person who committed the offense charged is part of the State's burden of proof beyond a reasonable doubt. *Kromah v. State*, 283 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.). It is well-established the testimony of a single witness is sufficient to support a conviction. *See Shah v. State*, 403 S.W.3d 29, 35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Duke v. State*, 365 S.W.3d 722, 731 (Tex. App.—Texarkana 2012, pet. ref'd); *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

In this case, the complainant identified Woolridge as the black robber in both a photo line-up and in court. Although Woolridge contends there are inconsistencies in the complainant's

testimony and portions of her testimony conflict with other evidence, it was within the jury's province to believe her testimony, and her testimony is legally sufficient evidence to support Woolridge's conviction. *Bullock v. State*, 509 S.W.3d 921, 929 (Tex. Crim. App. 2016) (noting "it is the jury's province to decide which parts of th[e] evidence to believe").

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH