

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0924-09

**ROBERT LEE WORTHY, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE ELEVENTH COURT OF APPEALS
## BROWN COUNTY

COCHRAN, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined. KELLER, P.J., filed a concurring opinion in which MEYERS, J., joined.

## OPINION

We granted appellant's petition for discretionary review to resolve a conflict among the courts of appeals[1] concerning whether Article 37.07, § 3(g),[2] requires the State to give pretrial notice of "same-transaction contextual evidence" that it intends to offer in the

---

[1] *See* TEX. R. APP. P. 66.3(a) (one reason for granting discretionary review is "whether a court of appeals' decision conflicts with another court of appeals' decision on the same issue").

[2] TEX. CODE CRIM. PROC. art. 37.07, § 3(g).

punishment stage of a non-capital trial.  We conclude that it does not.  Building upon our prior opinion in *Jaubert v. State*,[3] we hold that Article 37.07, § 3(g), which explicitly states that the notice requirement applies "in the same manner required by Rule 404(b)," refers to the scope of the evidence offered as well as to the timing of the evidence offered.[4] Therefore, because pretrial notice of "same-transaction contextual evidence" is not required under Rule 404(b), it is also not required under Article 37.07, § 3(g).  We affirm the court of appeals, which had, in essence, held the same.[5]

## A.    Facts

Appellant pled guilty to two counts of sexual assault of a child under the age of seventeen and requested that a jury assess punishment.  The jury heard that appellant and his then-wife, Sherry Worthy, took fourteen-year-old R.T. into their Brownwood home.  R.T.'s mother had died, and her father was in prison.  R.T. was a friend of appellant's daughter, Candice, and it was Candice who asked her parents to let R.T. live with them.  R.T. was dropped off by two of her aunts with a single sack of clothes.  Appellant and his wife provided for R.T. and gave her new clothes, her own room, and "more material things" than she had ever had.  After R.T. told appellant she wanted to be a pilot, he took her up in a

---

[3] 74 S.W.3d 1 (Tex. Crim. App. 2002) (holding that the notice requirement of TEX. CODE CRIM. PROC. art. 37.07, § 3(g), applies only to extraneous offense evidence offered during the State's punishment case-in-chief, just as Rule 404(b) requires notice only of extraneous offense evidence offered in the State's case-in-chief during the guilt stage).

[4] *Id.* at 3.

[5] *Worthy v. State*, 295 S.W.3d 685, 689-90 (Tex. App.—Eastland 2009).

private plane.

Within a few months, appellant's rough housing with R.T. became sexual in nature. They carried on a secret affair in the family home. About once a week, appellant would walk out of the front door and then sneak back in through R.T.'s bedroom window and have sex with her. Eventually, Sherry Worthy realized something nefarious was going on, and she kicked both her husband and R.T. out of the house. Sherry later divorced appellant.

Appellant and R.T. then spent a couple of nights at motels, first in Comanche, then in Stephenville. Next, R.T. moved in with the Russells–a family who had previously taken in her twin sister. Appellant, meanwhile, moved in with his step-brother, Claude Sellers.

Over appellant's objections, the jury heard that Sellers was himself a registered sex offender. While living with the Russells, R.T. would pretend to spend the night with her girlfriend, Hannah, because Hannah lived close to Sellers's apartment. Appellant would pick her up, and they would have sex at Sellers's apartment. Appellant testified that he knew that taking R.T. to that apartment was a violation of his step-brother's community supervision, but he said that he "took precautions." Appellant explained that he used a separate entrance to the apartment and installed a padlock on his door so that Sellers "had no access to my room and he had no knowledge of what was going on."

After a few weeks, R.T. and her sister went to live with their Aunt Christy in Santo, Texas. Appellant moved into a camper at the house for about a month. When Aunt Christy found out that R.T. and appellant still had a romantic relationship, she took R.T. to the police.

In all, the sexual liaison lasted about nine months.

R.T., who was nineteen at the time of trial, testified that she had been in love with appellant, and he with her. R.T. told the jury, "I just don't want anything to happen to him. That's it." Nonetheless, the jury sentenced appellant to eight years in prison on each count.

## B.    Direct Appeal

In the court of appeals, appellant argued that the trial court erred in admitting evidence that his step-brother was a registered sex offender because the State failed to give pretrial notice of its intent to offer that evidence.[6] The State had provided a document entitled "Notice of Intent to Offer Evidence of Prior Convictions and Extraneous Offenses" which listed (1) sexual offenses against R.T. that took place in Comanche and Erath Counties,[7] (2) a threat appellant made against R.T., and (3) appellant's admission that he had an ongoing sexual relationship with R.T. for several months. This admission encompassed the time period appellant lived with his step-brother, although Sellers is not explicitly named in the State's notice.[8]

---

[6] For purposes of this appeal, we assume, without deciding, that evidence of appellant's act of taking R.T. to Sellers's apartment knowing that Sellers was a registered sex offender was a "bad act" by appellant.

[7] These were tied to the two nights spent in motels in Comanche and Stephenville.

[8] The conduct itself is pled in the second count of the indictment. The first count alleged an offense in Brown County "on or about the 1st day of December 2003," and the second count alleged an offense in Brown County "on or about the 4th day of September 2004." Claude Sellers lived in Brownwood (in Brown County), and R.T. lived with the Russells and visited appellant at Sellers's apartment during the summer of 2004. Thus, the sexual acts occurring at Sellers's apartment were covered by the indictment. *See Rodriguez v. State*, 104 S.W.3d 87, 91 (Tex. Crim. App. 2003) (absent election, evidence of multiple occurrences of an act alleged in

The court of appeals rejected appellant's argument, holding that the evidence was same-transaction contextual evidence rather than extraneous-offense evidence:

> The evidence that Worthy, in committing the offense for which he was charged, violated the conditions of his stepbrother's community supervision that an unsupervised child under seventeen not be at his place of residence–showing his disregard for conditions of community supervision and placing the complainant in jeopardy–is part of the context of the crime for which he was being tried and is not an extraneous bad act. Consequently, the State's introduction of this evidence was not in violation of the trial court's order, which only related to extraneous bad acts. As the State notes, the trial court appears to have been under the impression that the evidence was not contextual and was subject to the notice requirement and that adequate notice had been given. Because the evidence related to the context of the offense for which he was charged and not conduct that was extraneous to his commission of that offense, we conclude that the trial court was in error in its reasoning. We reject the assumption in Worthy's arguments that this evidence consists of extraneous bad acts.[9]

Appellant asks this Court to resolve a conflict in the courts of appeals about whether Article 37.07, § 3(g)'s notice requirement encompasses same-transaction contextual evidence. The Eastland (in this case) and Austin courts[10] have held that it does not, while the Beaumont court has held that it does.[11] We agree with the Eastland and Austin courts.

**C.    Article 37.07, § 3(g)'s notice requirement does not encompass same-transaction contextual evidence.**

---

the indictment is not "extraneous offense" evidence; every act for which evidence is presented is covered by the indictment and, upon conviction, is jeopardy-barred).

[9] *Worthy*, 295 S.W.3d at 689-90.

[10] *Patton v. State*, 25 S.W.3d 387, 392 n.4 (Tex. App.—Austin 2000, pet. ref'd).

[11] *Waltmon v. State*, 76 S.W.3d 148, 155-56 (Tex. App.—Beaumont 2002, no pet.).

In discussing the admission of evidence during the punishment phase of a non-capital trial, Article 37.07, § 3(g) states, "On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence," and then refers to an "extraneous crime or bad act."[12] Rule 404(b), in turn, provides that, in certain circumstances, "[e]vidence of other crimes, wrongs or acts" may be admissible "provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction."[13]  The question here, as in our prior *Jaubert* decision, is when is pretrial notice required under Article 37.07, § 3(g)?  The answer is that pretrial notice must be given under Article 37.07, § 3(g), only when pretrial notice is required under Rule 404(b).

In *Jaubert*, we held that, because Article 37.07, § 3(g), incorporates by reference Rule 404(b)'s manner of giving notice and Rule 404(b)'s notice requirement encompasses only case-in-chief evidence, Article 37.07, § 3(g)'s notice requirement "appears on its face" to

---

[12]  TEX. CODE CRIM. PROC. art. 37.07, § 3(g).  That section reads as follows:
On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence.  If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act.  The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

[13]  TEX. R. EVID. 404(b).

encompass only punishment case-in-chief evidence.[14] We also recognized that extra-textual factors supported limiting Article 37.07, § 3(g)'s notice requirement to case-in-chief evidence. Drawing on the debate on the House floor, we concluded that the legislative history of Article 37.07, § 3(g)

> indicates that the primary purpose of the statutory amendment was to clarify, after this Court's decision to the contrary in *Grunsfeld* [*v. State*, 843 S.W.2d 521 (Tex. Crim. App. 1992)], that evidence of unadjudicated extraneous offenses and prior bad acts is admissible at punishment. The notice provision was designed to reinforce existing law regarding notice of extraneous offenses, not to create a new and different requirement . . . . At the time the statute was amended, Rule 404(b) described the existing law regarding notice of extraneous offenses.[15]

Thus, according to *Jaubert*, notice under Article 37.07, § 3(g), for punishment purposes must be given to the same extent and in the same manner as it is required under Rule 404(b) during the guilt stage.

Appellant mentions our decision in *Jaubert*, but discounts its reasoning as being applicable only to rebuttal punishment evidence. Instead, he relies upon the Beaumont Court of Appeals's opinion in *Waltmon v. State*,[16] which was delivered just one week after we had decided *Jaubert*. *Waltmon*, however, relied on language from the court of appeals's opinion in *Jaubert*–a decision that we reversed because it incorrectly concluded that the "in the same

---

[14] *Jaubert,* 74 S.W.3d at 3. We further noted that common law also favored this limitation because the defendant determines whether a contested issue will be raised, and his decision will not be made known until he presents his case. *Id.* at 3-4.

[15] *Id.*

[16] 76 S.W.3d 148 (Tex. App.—Beaumont 2002, no pet.).

manner" language in 37.07, § 3(g), "'relates only to the procedure governing a defendant's request and the State's response to that request, and not to the scope of the information to which the section applies.'"[17] Appellant notes that Professors Dix and Dawson have recognized that *Waltmon*'s holding–that there is no same-transaction contextual evidence exception to Article 37.07, § 3(g)–is "somewhat questionable" in light of *Jaubert*.[18] Nonetheless, appellant urges us to ignore *Jaubert*'s reasoning and adopt *Waltmon's*. He argues that the plain language of 37.07, § 3(g), is contrary to the court of appeals's position in this case because Rule 404(b) explicitly excludes evidence of matters "arising in the same transaction" from the notice requirement, but 37.07, § 3(g), does not explicitly do so. That is a distinction without a difference under *Jaubert*'s reasoning: Pretrial notice under Article 37.07, § 3(g) is required when and in the same manner as under Rule 404(b). The two notice rules serve the same purpose. They guard against "surprise and promote early resolution on the issue of admissibility" of uncharged misconduct, conduct that the defendant would not otherwise know might be offered at trial, either during the guilt or punishment phase.[19]

Furthermore, "same-transaction contextual evidence" is intrinsic to the offense; it is

---

[17] *Waltmon*, 76 S.W.3d at 155 (quoting *Jaubert v. State*, 65 S.W.3d 73 (Tex. App.—Waco 2000)). We reversed *Jaubert* on April 10, 2002. *Waltmon* was decided on April 17, 2002.

[18] Appellant's Brief at 11 (citing 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 22.251 (2d ed. Supp. 2009)).

[19] FED. R. EVID. 404(b), Notes of Advisory Committee on 1991 amendments ("The amendment to Rule 404(b) adds a pretrial notice requirement in criminal cases and is intended to reduce surprise and promote early resolution on the issue of admissibility.").

not "an extraneous crime or bad act" to which Article 37.07, § 3(g), explicitly refers.  Under the common law, this contextual evidence was treated as a distinct class–"res gestae" evidence–under the reasoning that the criminal act does not occur in a vacuum, and the jury has a right to hear the contextual evidence.[20]  Likely as a result, it was explicitly defined out of "other crimes, wrongs or acts" in Texas Rule of Evidence 404(b), much as a party's own statement is defined out of the hearsay rule in Rule 801(e)(2).  It is not explicitly defined out of "other crimes, wrongs or acts" in its federal counterpart, but the cases interpret Federal Rule 404(b) to exclude notice of evidence that is "inextricably intertwined with" or "part and parcel of" or "necessary to complete the story of" the alleged offense.[21]  This is consistent

---

[20] *See Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972) (noting that background evidence is admitted to "show the context in which the criminal act occurred . . . under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence.").

[21] *See United States v. Sumlin*, 489 F. 3d 683, 689 (5th Cir. 2007) ("Rule 404(b) only applies to limit the admissibility of evidence of extrinsic acts.  Intrinsic evidence, on the other hand, is generally admissible so that the jury may evaluate all the circumstances under which the defendant acted.") (internal cites and quotation marks omitted); *United States v. Gobbi*, 471 F. 3d 302, 311 (1st Cir. 2006) ("The prohibition against 'other acts' evidence typically refers to evidence that is extrinsic to the crime charged and introduced for the purpose of showing propensity. . .  Here, however, we never reach the question of propensity; the drug-purchasing evidence in this case is intrinsic to the conspiracy described in count 1 of the indictment.  That is to say, the evidence comprises part and parcel of the charged offense.  Thus, the evidence is not 'other acts' evidence at all and, accordingly, Rule 404(b) is not implicated."); *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (testimony about defendant's prior drug run was necessary to provide "coherent and comprehensible story" about the crimes for which defendant was charged; evidence was "inextricably intertwined" with charged offense and not subject to exclusion on basis of Rule 404(b)); *United States v. Gorman*, 312 F.3d 1159, 1162-63 (10th Cir. 2002) (testimony relating to marijuana was intertwined with discovery of firearm and was not Rule 404(b) evidence subject to notice).

with the notes of the federal advisory committee on the 1991 amendments that added the notice requirement, which made clear that the "amendment does not extend to evidence of acts which are 'intrinsic' to the charged offense. . ."[22]

That said, prudent prosecutors provide pretrial notice of all evidence that could possibly be considered extraneous to the charged offense so that judges need not "engage in a hair-splitting debate" about whether some specific item is evidence of an extraneous offense or is same-transaction contextual evidence.[23]  The evidence in this case led to just such a hair-splitting debate.[24]  There were three bench conferences about the admissibility of the evidence of Sellers being a registered sex offender.  Initially, the trial judge ruled the evidence inadmissible under Rule 403, but ultimately he held that it was admissible bad-act evidence and that the State did comply with notice.[25]

---

[22] FED. R. EVID. 404, Notes of Advisory Committee on 1991 amendments.

[23] *Jaubert*, 74 S.W.3d at 8 (Cochran, J., concurring).

[24] For example, one colloquy concerning the evidence of Sellers's sex-offender status went as follows:

Court:       Isn't that something that you would have needed to put him on notice that you wanted to go into, because isn't that a bad act?
Prosecutor:  It's not a bad act.
Court:       Why isn't it a bad act?
Prosecutor:  It's not a criminal act.
Court:       I didn't say it was a criminal act.  That's the whole reason you want it before the jury is it's a bad act, isn't it?
Prosecutor:  I want it before the jury as well because, surely, in proving our case, putting on evidence, he is having sex with a girl at another location, how is that not contextual to the offense?

[25] The trial judge explained his final ruling as follows:
All right.  Earlier when the State attempted to get this in, it was under the theory

As noted above, the court of appeals held just the opposite: The evidence concerning appellant's step-brother was same-transaction contextual evidence. There is no bright line here. On the one hand, as the trial court pointed out, the evidence was not absolutely necessary to the jury's understanding of the charged offense.[26] On the other, it is not divisible in the way that evidence involving a different victim would have been;[27] it is

---

of, as I recall, the same transaction/contextual evidence. And since this was the punishment case only with–as a result of the Defendant's plea of guilty, the Court's view was that the prejudicial value was greater than the probative value as addressed at that point. And, therefore, I wouldn't let it in.

And I don't believe it really was the same transaction/contextual evidence because the evidence does make sense without there being a reference to the sex offender.

However, now things have evolved, it's a little different. The notice issue was raised. That was also a factor before. That was not shown to be complied with.

Now I do find that the State did comply, albeit not as direct as I would like. It was–I'm going to overruled the notice objection of this.

I do believe this is a bad act allegation. And, therefore, I do think under our law it is something that can come in and be considered, and I'm going to allow it to give whatever weight the jury determines it is entitled to, that is the act of taking, allegedly, that child there at a place where there is a registered sex offender.

So, it's not the fact that he is a sex offender and solely running that in as part and parcel of the main offense, but a bad act attributed to the Defendant, if they believe it happened.

So, at this juncture, I'm going to allow it to come in.

[26] *See McDonald v. State*, 179 S.W.3d 571, 577-78 (Tex. Crim. App. 2005).

[27]*Id.* at 578 ("The evidence concerning the complainant makes perfect sense without bringing in evidence of the appellant's conduct with the cousin and is clearly divisible in that it involves a different victim, at a different time, after the charged conduct was completed. When the facts of the primary offense can be understood on their own, notice is needed for evidence of uncharged misconduct. In this case, the primary offense was understandable on its own facts. We therefore conclude that the trial court abused its discretion in admitting the uncharged offense without notice because the appellant was entitled to notice upon request under Rule 404(b).").

"intrinsic"–a circumstance of the defendant's charged criminal act.[28]  It is somewhat like offering evidence that the murderer killed his victim in a bordello; it is not essential in proving the offense of murder to show that it occurred in a bordello, but it certainly is an intrinsic circumstance surrounding that particular murder and it shows the context of the crime.

Because we agree that the court of appeals correctly concluded that pretrial notice of same-transaction contextual evidence is not required under Article 37.07, § 3(g), we affirm the judgment of that court.

Delivered: June 9, 2010

Publish

---

[28] *See, e.g., Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993) (in capital-murder case, evidence of kidnapping and double murder of deceased homeowner's wife and son was "'[s]ame transaction contextual evidence' . . . [that] imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven.  As such it is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged.") (citation omitted); *Stoker v. State*, 788 S.W.2d 1, 12-13 (Tex. Crim. App. 1989) (testimony that defendant was in debt and had "fronted too many drugs" admissible in capital murder trial as showing defendant's state of mind and circumstances at time of robbery-murder); *see also United States v. Campbell*, 49 F.3d 1079, 1083-84 (5th Cir. 1995) (in Mann Act prosecution for traveling with two women for purposes of prostitution, proper to admit evidence that the three used drugs during the trip and that defendant beat the two women as this "carrot" and "stick" behavior was "relevant intrinsic evidence of how the actual violation occurred.").