

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00018-CR

_____

MARCUS GARDNER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1573103D

---

Before Womack and Wallach, JJ.; and Lee Ann Dauphinot (Senior Justice, Retired,
Sitting by Assignment)
Memorandum Opinion by Justice Dauphinot

**MEMORANDUM OPINION**

A jury convicted Appellant Marcus Gardner of possession with intent to deliver one gram or more, but less than four grams, of heroin, a controlled substance. The jury sentenced Appellant to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Appellant brings two points on appeal, arguing that the trial court reversibly erred in denying his pretrial motion in limine challenging admission of a portion of the video from the police camera mounted on a telephone pole and in denying his motion to suppress the evidence found in the search of a Dodge truck. Appellant specifically asked the trial court to carry his motion to suppress along with the trial and to make a ruling before the close of the trial. The trial court granted Appellant's request. Because the trial court committed no reversible error, we affirm the trial court's judgment.

Brief Facts

In several areas of the City of Fort Worth are a series of cameras installed on poles—usually telephone poles—that are mounted, maintained, operated, and monitored by the Fort Worth Police Department. They are located primarily in high-crime areas.

Fort Worth Police Officer Matthew Schroeder testified that, although he was off duty the day of the alleged offense, he was monitoring the cameras in the East Davis area from his cell phone and saw what appeared to him to be some hand-to-

hand drug transactions involving a gray Dodge Ram pickup truck in the parking lot of a convenience store. Officer Schroeder was able to watch the activity from two different angles because there were two cameras on separate poles at that location. He identified Appellant Marcus Gardner as the person associated with the Dodge pickup that day and saw him making what appeared to be hand-to-hand transactions.

Officer Schroeder contacted Officer Rudd, who had control of the cameras at that location, and asked him to zoom in on the activity he was watching. Officer Schroeder testified he had reasonable suspicion he was watching Appellant participate in drug sales. Officer Schroeder then called Officer Gray, a member of his team, and asked him to move the rest of Officer Schroeder's team as well as some marked units into the area he had been watching on East Davis. The plan was to detain the people involved in the hand-to-hand activity and to investigate any kind of narcotics violation. Specifically, the officers were to detain Appellant.

Even though he was off duty, Officer Schroeder drove to the East Davis location, still watching the video. The video from the two pole cameras that Officer Schroeder was watching was admitted into evidence.

Officer Schroeder testified that the video showed that Appellant was sitting in the front passenger seat of a black sedan. Officer Schroeder saw Appellant engaged in what appeared to him to be hand-to-hand drug transactions. On the car's dashboard directly in front of Appellant were what Officer Schroeder believed to be

3

"[a] pill bottle[;] a baggie with a green, plant-like substance[;] a baggie with some white[-] and a darker brown-colored substance[;] . . . and a key."

Officer Schroeder also testified that the key had a distinctive fob on it and that Appellant had cash in his hand, typical of someone engaged in hand-to-hand drug transactions. Officer Schroeder described Appellant as wearing a black jacket, perhaps Nike brand; a gold watch on his left hand; and gold rings on his left ring finger and "his left pinky." He was wearing gold chains around his neck and a white undershirt. There was a child visible in the back seat.

Officer Schroeder observed Appellant collect the items from the dashboard in front of him, get out of the black sedan, and then get into the gray Dodge pickup where he engaged in another drug transaction. Appellant also went into the convenience store and spoke on his cell phone. While Appellant was inside the convenience store, the uniformed police officers began to arrive and people in the parking lot began to run. Appellant came out of the store and walked across the parking lot toward the pickup, got into the pickup, and apparently drove off while the officers were engaged in a foot chase.

After Officer Schroeder arrived at the convenience store parking lot, Officer Gray of the tactical narcotics team notified him that the Dodge pickup had been located. When Officer Schroeder reached the location where Officer Gray had detained Appellant, Appellant was standing near the Dodge pickup and was dressed as the person on the video had been dressed. Appellant asked Officer Schroeder why he

4

was being detained, but Officer Schroeder claimed he did not know. Although Officer Schroeder was wearing a body camera, he muted the audio so that we cannot tell what else he said.

Ricky, a dog trained to detect narcotics, was called to perform a sniff around the pickup; he first alerted on a basketball goal on the edge of the curb and then, after being called off the basketball goal, appeared to alert on the pickup. The police called the fire department to open the truck by forcing a door open. The officers searched the pickup, found drugs, and wrote an arrest warrant for Appellant.

Officer Schroeder testified that Appellant denied owning the truck and denied that he had a key for the truck. But after Officer Coleman drove Appellant downtown to the police station, the officer found the key wedged out of sight behind the back seat. He testified that Appellant had admitted to him that he had "stuffed it in the backseat." Officer Coleman testified it was the policy of the Fort Worth Police Department to have the body camera, including the audio portion, on the entire time an officer is having contact with someone in custody. To turn it off would violate departmental policy. The State forwarded the video to a mute portion and played it. Officer Coleman testified that during the time the video was muted, Appellant had admitted to having and then hiding the key in the police car. Officer Coleman also admitted that he always searched the back seat of his unit after transporting a defendant. That search is also departmental policy. Officer Coleman explained that, although departmental policy required that the video and audio equipment provided

5

by the city be activated at all times when an officer was having contact with someone in custody, officers mute their body cams when they are "just having a conversation that's not necessary for trial, or [when] we don't want anyone else to hear what we're talking about."

Officer Gray testified that he was a narcotics officer and that Officer Schroeder, who was off duty the day Appellant was arrested, had called him and asked him to assist by helping to follow a suspect until a uniformed officer could perform a "takedown." He learned Appellant had switched from a black sedan to a Dodge pickup. Officer Gray located Appellant quickly. He saw Appellant outside the truck by the passenger's door, and, inside the truck, Officer Gray saw a scale he recognized as an object often connected with the distribution of narcotics. None of the officers had a key to the pickup, so they decided to wait for a K-9 officer's dog to sniff the vehicle. Although the dog initially alerted on the basketball goal, he ultimately alerted on the passenger door, finally providing probable cause to search the pickup.

Inside the pickup's console, the officers found 2.666 grams of heroin and a baggie containing marijuana. Additionally, the officers located two scales that are commonly used in narcotics distribution.

Denial of Motion in Limine

In his first point on appeal, Appellant challenges the trial court's denial of his pretrial motion in limine—the consideration of which included an express admissibility ruling, as requested by Appellant—in which he requested prohibition of

6

the evidence adduced from the telephone pole videos.[1]  Appellant argued that the conduct recorded on the videos occurred at a different location than where he was detained; that the conduct occurred approximately thirty minutes before Appellant was detained; and that the suspected narcotics found in the Dodge truck do not match the items seen on the pole-camera videos.  Consequently, he argues, the offenses recorded on the videos were extraneous to the charged offense and were not contextual.  He contends the videos also "had immense danger to unfairly prejudice [him], confuse the issue of the actual charged conduct, and mislead the jury."

Appellant contends on appeal that the videos introduce evidence of his prior crimes, wrongs, or other acts for the purpose of showing his character and showing that he acted in conformity with that character on a particular occasion, in violation of the mandate of Texas Rule of Evidence 404(b), relying on *Smith v. State*, 5 S.W.3d 673, 678 (Tex. Crim. App. 1999).  He argues that the "spatial, temporal, and evidentiary differences between the extraneous evidence and the charged offense support that the extraneous evidence was not contextual."

We have closely examined all the videos contained in the record as well as the testimony of all the witnesses and argument of counsel for both sides.  The law is

---

[1]*See* Tex. R. Evid. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."); *McDuff v. State*, 939 S.W.2d 607, 618 (Tex. Crim. App. 1997) ("It is well-settled that the denial of a motion in limine is not sufficient to preserve error for review, but rather there must be a proper objection to the proffered evidence.").

well-established that "same transaction contextual evidence" is intrinsic to the offense; it is not "an extraneous crime or bad act" to which Code of Criminal Procedure Article 37.07, § 3(g), explicitly refers.[2]

The Court of Criminal Appeals has held that "[s]ame-transaction contextual evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case incomplete or difficult to understand."[3] Under the common law, this contextual evidence was treated as a distinct class "res gestae" evidence under the reasoning that the criminal act does not occur in a vacuum, and the jury has a right to hear the contextual evidence.[4] It was explicitly defined out of "other crimes, wrongs or acts" in Texas Rule of Evidence 404(b), much as a party's own statement is defined out of the hearsay rule in Rule 801(e)(2).[5]

In the case now before this court, the videos and testimony showing Appellant engaged in hand-to-hand drug transactions outside the convenience store support the officers' reasonable suspicion that Appellant was committing the criminal offense of possession of a controlled substance with intent to deliver. This reasonable suspicion

---

[2]Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g).

[3]*Prible v. State*, 175 S.W.3d 724, 732 (Tex. Crim. App. 2005).

[4]*Worthy v. State*, 312 S.W.3d 34, 41 (Tex. Crim. App. 2010).

[5]*Id.* at 39.

supports the officers' actions leading to their developing probable cause for their allegations in support of the warrant request. Without this evidence, the officers' actions would be unsupported, difficult to understand, and the bases for the warrant could only be guessed at.

Appellant also claims that admission of the evidence violates Rule 403, which prohibits the admission of otherwise admissible relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."[6] Appellant raised this express objection during the pretrial hearing outside the jury's presence, and the trial court ruled on this objection.[7] Under Rule 403, the trial court must balance the inherent probative force of the proffered item of evidence, along with the proponent's need for that evidence, against (1) any tendency of the evidence to suggest decision on an improper basis, (2) any tendency of the evidence to confuse or distract the jury from the main issues, (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (4) the likelihood that

---

[6]Tex. R. Evid. 403.

[7]Tex. R. Evid. 103(b).

presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[8]

The nature of the evidence as same-transaction contextual evidence, as explained above, makes it particularly relevant. Rather than having the potential to confuse the jury, consume an inordinate amount of time, or suggest a decision on an improper basis, the evidence was necessary to the jury's understanding of the charged offense. Thus, the trial court did not err by concluding the evidence was admissible under Rule 403.

The complained-of evidence was admissible as same-transaction contextual evidence.[9] Its admission before the jury was proper and did not unfairly prejudice Appellant. We overrule Appellant's first point on appeal.

Motion to Suppress Evidence Found During Search of Truck

In his second point challenging the trial court's denial of his motion to suppress, Appellant argues that while sniffing for drugs, Ricky—the trained narcotics-detection dog that alerted on the portable basketball goal located at the edge of the curb, facing the street, but near the Dodge pickup—should have been ordered to stop his search at that point rather than being ordered to again search the outside of the Dodge pickup. Appellant argues that the failure to stop Ricky's search unreasonably

---

[8]*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

[9]*See, e.g.*, *Moreno v. State*, 195 S.W.3d 321, 327 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

prolonged his detention, violated the Fourth Amendment, and rendered the continued detention and search unlawful.

Appellant points out that two police officers, Officer Coleman and Sergeant Hubbard, admitted that Ricky had alerted on the basketball goal. Sergeant Hubbard justified the alert by saying that it was a windy day and that the scent had probably pooled at the basketball goal. He also said that Ricky did not give a false alert but rather a "fringe" alert. He explained that a fringe alert could be an alert of up to six feet from the target source. There is no evidence that anyone thoroughly searched the basketball goal to determine whether there were drugs or drug residue. Appellant suggested at trial that Ricky alerted on the basketball goal to get the reward he is given for an accurate alert. Appellant also suggests on appeal that, because Ricky was not rewarded and was sent back to search the truck a second time, he alerted on the truck to please his handler and to receive his reward.

Standard of Review on a Motion to Suppress

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard of review.[10] A reviewing court should give great deference to the trial court's findings of historical facts, so long as the record supports those findings.[11] The reviewing court also gives deference to the trial court's rulings on mixed questions of

---

[10]*Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

[11]*Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).

11

law and fact when those rulings turn on an evaluation of credibility and demeanor.[12]

Where such rulings do not turn on an evaluation of credibility and demeanor, the appellate court reviews the trial court's actions de novo.[13]

<u>Application</u>

Officers must have reasonable suspicion to detain a person and his property while conducting a canine sniff.[14] Even if the officers have reasonable suspicion to support the initial detention, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."[15] Although officers must act to confirm or dispel suspicion quickly, the detention may continue for a reasonable time until they have done so.[16] Reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by the police and its degree of reliability.[17]

---

[12]*Id.*

[13]*Id.*

[14]*United States v. Place*, 462 U.S. 696, 706–10, 103 S. Ct. 2637, 2645–46 (1983); *Davis v. State*, 947 S.W.2d 240, 243–44 (Tex. Crim. App. 1997).

[15]*Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983).

[16]*Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014).

[17]*Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990); *see also Penn. v. Brown*, 924 A.2d 1283, 1285, 1288–89 (Pa. Super. Ct. 2007) (upholding probable-cause determination for search when canine's first sniff of bag was inconclusive, but canine alerted on bag after it was repositioned into a group of bags, and citing federal and state cases holding that a canine's failure to alert is not conclusive of a probable-

The trial court saw video of Appellant in the black sedan conducting hand-to-hand drug transactions. That video shows the objects in front of Appellant on the dash of the sedan and cash in Appellant's hands after the hand-to-hand exchanges. The judge could also see Appellant get into the Dodge Ram pickup. Officer Gray testified that he saw Appellant outside the truck by the passenger's door within minutes of Appellant's leaving the convenience store, and, inside the vehicle, Officer Gray saw a scale he recognized as an object often connected with the distribution of narcotics. Sergeant Hubbard testified before the court concerning Ricky's training and explaining Ricky's conduct.

The issue before this court is a mixed question of credibility and law. We do not disturb the trial court's determination of credibility. In addressing the issues of law, without disturbing the trial court's apparent determinations of credibility, and applying the appropriate standard of review, we cannot say the trial court erred in denying Appellant's motion to suppress the evidence found inside the pickup. We overrule Appellant's second point on appeal.

Conclusion

Having overruled Appellant's points on appeal, we affirm the trial court's judgment.

---

cause determination and is instead a factor to consider in the totality of the circumstances).

/s/ Lee Ann Dauphinot
Lee Ann Dauphinot
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  September 9, 2021