**Opinion filed February 8, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00149-CR
_____

### FABIAN ANDRES ORTEGA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-20-1430-CR**

## M E M O R A N D U M   O P I N I O N

Appellant was convicted of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(v), (e), (f)(1) (West 2019). A jury found him guilty and assessed his punishment at fifty years' imprisonment in the Correctional Institutions Division of the Texas Department of Criminal Justice, and the trial court sentenced him accordingly. On appeal, Appellant challenges his conviction in three issues. First, he contends that the evidence is legally insufficient

to sustain his conviction. He then contests the admissibility of incriminating Snapchat messages. And finally, he claims that he received ineffective assistance of counsel. We affirm.

*Factual Background*

When Appellant was nineteen years old, he found out that he had a four-month-old daughter, B.S.M. Appellant lived with his parents in Odessa and co-parented amicably with the child's mother, B.G., until August 26, 2020. Pursuant to a custody agreement, B.S.M. visited Appellant and his parents every Tuesday and Thursday from 6:00 p.m. to 8:00 p.m. and every first, third, and fifth weekend of the month. Appellant took B.S.M. on fishing trips and other weekend vacations. Appellant even used a photograph of himself and B.S.M. as one of his profile pictures on Tinder, a dating app.

From March 12 to March 15, 2020, Appellant traveled alone to Del Rio for a fishing trip. While in his room at a Motel 6, he logged into Tinder and matched with a transgender woman named Fernando "Fern" Garcia. Garcia and Appellant sexually "messed around," and continued to communicate for months thereafter via text message, video calls, Snapchat, and Tinder. Their conversations were primarily "sexual, like masturbation, things like that," including sending nude photographs and videos. But Appellant shared personal information with Garcia as well, such as B.S.M.'s existence and age.

In August of 2020, Appellant advised Garcia that he may be returning to Del Rio with B.S.M. Appellant then told Garcia his "rule" was that when he and B.S.M. are together, they "don't wear clothes." This gave Garcia "a bad gut feeling," so she asked for clarification. Appellant continued, "I want my daughter to see me so she can learn how to take care of daddy." Appellant's Snapchat messaging was sexually explicit—that he put "honey or cereal over his penis and would let [B.S.M.] lick it off of him," how he would "guide the cum to her mouth with [his] dick," and that he

2

planned to allow other men to "use" B.S.M. sexually.[1]  He recounted making B.S.M. rub his penis "up and down," and said it "[f]eels so good."  As proof, Appellant sent Garcia a closeup photograph of a child that he represented to be B.S.M. with Appellant's semen in her mouth, and with the caption, "[c]an barely see it."

Garcia reported the sexual assault to police and spoke to FBI agents stationed in Del Rio.  On August 24, 2020, FBI agents from the Midland office met with Appellant at his parents' home, and he acknowledged that his Snapchat usernames were "Run_forest"[2] and "Caramel Twisty."  He claimed that he had deleted his Snapchat account "30 days prior" but later admitted to accessing it within the preceding thirty days.  Appellant then declared that he had given his username and password to "[a] contact . . . he made online," and "didn't really know what they did on it."

On August 26, B.G. and her mother, J.M., received a visit from the Department of Family and Protective Services (the Department), advising them of the allegations.  B.S.M., who only spoke "[o]ne to two words" at the time, underwent a forensic interview but was "too young" to articulate any abuse.  The results of her sexual assault exam were likewise inconclusive.

Investigator Heidi Zavala with the Ector County Sheriff's Office traveled to Del Rio to meet with Garcia and subpoenaed Motel 6 records that confirmed Appellant's stay from March 12 to March 15.  Appellant was charged with and ultimately convicted of aggravated sexual assault of B.S.M., a child younger than six years of age, by intentionally or knowingly causing B.S.M.'s mouth to contact Appellant's sexual organ.  *See* PENAL § 22.021(a)(1)(B)(v), (e), (f)(1).

---

[1]Because Appellant's conviction hinges upon the content of the Snapchat messages, we include the full text of them in this opinion despite their explicit nature.

[2]Appellant gave Garcia the Snapchat name "Run_forest1," but FBI Agent Scott Livingstone referred to it simply as "Run_forest."

*The Admission of Snapchat Messages*

Appellant's first two issues hinge on whether the evidence was sufficient to show that he authored the explicit Snapchat messages discussing the sexual acts he committed against B.S.M. Accordingly, we first address Appellant's second issue in which he asserts that the trial court abused its discretion by admitting the messages because they were not properly authenticated and because they contained inadmissible hearsay.

We note that the propriety of the trial court's ruling on the admissibility of the Snapchat messages is irrelevant to our analysis of the sufficiency of the evidence to support Appellant's conviction. In this regard, when conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Here, because our discussion of the admissibility of the Snapchat messages also concerns their evidentiary strength, we address Appellant's admissibility issue first.

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). The trial court's decision will be upheld as long as it was within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). We will not reverse a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 82–83, 93 (Tex. Crim. App. 2016).

As a condition precedent to admissibility, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a); *Tienda*, 358 S.W.3d at 638. But authenticity is ultimately a question for the jury; the trial court is merely the gatekeeper, and itself need not be persuaded that the proffered evidence is authentic. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015); *Tienda*, 358 S.W.3d at 638; *see also Cain v. State*, 621 S.W.3d 75, 79 (Tex. App.—Fort Worth 2021, pet. ref'd). Under this "liberal standard of admissibility," the trial court must simply decide whether the proponent has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic. *Butler*, 459 S.W.3d at 600 (quoting Cathy Cochran, *Texas Rules of Evidence Handbook* 922 (7th ed. 2007–08)).

"Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda*, 358 S.W.3d at 638 (citing TEX. R. EVID. 901(b)). For example, when authenticating text messages, a witness might have knowledge of the authorship thereof because they "contained information that only the purported sender could be expected to know," or "the purported sender has responded to an exchange of electronic communications in such a way as to indicate circumstantially that he was in fact the author of the particular communication." *Tienda*, 358 S.W.3d at 640–41.

Here, Garcia and Appellant developed a familiarity with each other and spoke to each other over video calls, phone calls, text messages, and Snapchat in the months following their rendezvous in Del Rio. Appellant had two Snapchat usernames—Run_forest1 and Caramel Twisty—and admitted to FBI agents that these were his usernames. On video calls with Appellant, Garcia could see his face, and Appellant sent her sexually explicit photographs and videos of his penis.

Moreover, the content of the Snapchat messages was consistent with Appellant's knowledge and awareness that the recipient, Garcia, had a sexual relationship with him, lived in Del Rio, and knew he had a daughter. When Appellant brought up bringing B.S.M. along on his next trip to Del Rio, he gave no background or introductory information; presumably he had already discussed her age and existence with Garcia. Such details known only to someone close to the situation at the time constitute "distinctive characteristics and the like" to support a rational inference by the factfinder that Appellant authored the messages. *See* TEX. R. EVID. 901(b)(4); *Butler*, 459 S.W.3d at 603–04 ("Conversations and events that precede or follow the communications at issue, when identified or referred to within the written communication, can provide contextual evidence demonstrating the authenticity of such communications.").

"It is, of course, within the realm of possibility that [Appellant] was the victim of some elaborate and ongoing conspiracy" initiated by his unknown online contact to whom he purportedly gave his Snapchat login information. *See Tienda*, 358 S.W.3d at 645. Conceivably, some unknown malefactor used Appellant's Snapchat account to concoct boastful messages about sexually assaulting B.S.M., was aware that Appellant and Garcia had previously engaged in phone and video sex, and had engaged in sex in Del Rio months prior. *See id.* at 646. "But that [was] an alternate scenario whose likelihood and weight the jury was entitled to assess once the State had produced a prima facie showing" that it was Appellant, not some unidentified deviant, who created these incriminating messages and the photograph. *See id.*

We thus conclude that the State presented enough evidence to "bridge the logical gap and permit a proper inference that the purported author sent the message[s]." *Butler*, 459 S.W.3d at 602. The trial court had sufficient evidence to determine that the Snapchat messages were authentic and were sent and authored by Appellant.

Appellant also asserts that the messages contained hearsay, which rests on the premise that they were not properly authenticated. Because the trial court had sufficient evidence to determine that the messages were sent and authored by Appellant, and the trial court did not abuse its discretion in admitting the messages as authored by him, Appellant's statements therein were admissions and were therefore not hearsay. *See* TEX. R. EVID. 801(e)(2)(A). We overrule Appellant's second issue.

## *Sufficiency of the Evidence*

In his first issue, Appellant argues that the evidence was legally insufficient to establish that the child depicted in the closeup explicit photograph was in fact B.S.M. Appellant further contends that State's evidence is "inherently unreliable" because "nothing definitively connects [Appellant] to having sent the messages." To support this contention, he directs our attention to "law enforcement negligence," the inconclusive results from B.S.M.'s sexual assault examination, and the lack of an outcry.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023).

When conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Dority v. State*, 631 S.W.3d 779, 784–85 (Tex. App.—Eastland 2021, no pet.) (We may not reevaluate the weight and credibility of the evidence to substitute our judgment for

that of the factfinder.). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Garcia*, 667 S.W.3d at 761 (quoting *Jackson*, 443 U.S. at 319). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.* at 762.

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We do not use a "divide and conquer" strategy, consider what evidence could have or should have been presented, nor do we speculate about evidence that the State did not present. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012); *see also Espinoza v. State*, No. 11-19-00232-CR, 2022 WL 3903774, at *5 (Tex. App.— Eastland Aug. 31, 2022, pet. ref'd) (mem. op., not designated for publication). Finally, we do not review the sufficiency of the police investigation; we review the evidence presented at trial. *Espinoza*, 2022 WL 3903774, at *5.

As relevant to this case, a person commits the offense of aggravated sexual assault by intentionally or knowingly causing the mouth of a child under six years of age to contact his sexual organ. PENAL § 22.021(a)(1)(B)(v), (e), (f)(1). Without repeating Appellant's acts as explicitly set out in the factual background above, the jury, in its discretion as the factfinder, was entitled to believe the evidence supporting its conclusion that Appellant caused the mouth of B.S.M. to contact his sexual organ. As to those acts, Appellant promised Garcia that he would "show [her] when [B.S.M.] comes back" for her scheduled visitation.

Attacking the sufficiency of that evidence, Appellant suggests that securing business records from Snapchat was "the *only* way" to confirm that Appellant

authored the messages. However, as established, Appellant "definitively connect[ed]" himself to having sent the messages when he verified his Snapchat usernames to FBI agents and admitted that he had accessed his account in August of 2020. Moreover, the fact that he communicated with the same style and knowledge that only he would possess is further indicative of his authorship of the trial exhibits at issue. *See Tienda*, 358 S.W.3d at 645–47; *Butler*, 459 S.W.3d at 602–04. As we have said, the State supplied the trial court with enough evidence to connect Appellant to the Snapchat messages, and the jury, by its verdict, concluded that Appellant was the sender. We defer to the determination of the factfinder, and we find the evidence legally sufficient to support its determination. *See Brooks*, 323 S.W.3d at 899.

With respect to the photograph, Appellant's father and sister testified that Appellant was "[n]ever alone" with B.S.M., and that the child in the photograph was not her. But the jury heard B.G. testify that she was sure that the photograph depicted her daughter. J.M., B.S.M.'s grandmother, was "about 80 percent" sure that it was a closeup of B.S.M. Additionally, Investigator Zavala conducted a comparative "image search" using the photograph and could not find that image on the internet. Investigator Zavala likewise revealed that while they were executing the search warrant, which occurred after Appellant was contacted by the FBI and the Department, Appellant's father confessed to deleting sexually explicit photographs of a girl from Appellant's phone. Appellant sent the photo contemporaneous with his detailed account of sexually assaulting his two-year-old daughter. Based on the evidence, we find that the jury as the sole judge of witness credibility could have rationally found that the child in the photograph was B.S.M. *See Garcia*, 667 S.W.3d at 761–62.

The jury's decisions in weighing the evidence and weighing the testimony of the trial witnesses constitute credibility determinations to which we must defer. *See*

9

*Brooks*, 323 S.W.3d at 899. And we cannot speculate about what the evidence could have or should have shown. *See Merritt*, 368 S.W.3d at 526. Viewing the evidence presented at trial in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense for which Appellant was convicted. *See Jackson*, 443 U.S. at 319. We overrule Appellant's first issue.

*Ineffective Assistance of Counsel*

In his third issue, Appellant contends that his trial counsel was ineffective when counsel failed to object to evidence of Appellant's sexual preference and orientation and to the admission of the photographs showing his genitals. He argues that his sexual orientation was "[i]rrelevant and highly prejudicial," and that the admission of the photographs was "truly incomprehensible . . . and even more outrageous that trial counsel made no efforts to prevent it."

Under the two-pronged test in *Strickland v. Washington*, a defendant challenging counsel's representation must establish that his counsel's performance (1) was deficient, and (2) prejudiced his defense. 466 U.S. 668, 687 (1984); *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023). To establish that counsel's actions were deficient, the defendant must show by a preponderance of the evidence that counsel's actions fell below an objective standard of reasonableness. *Hart*, 667 S.W.3d at 781. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). Courts should consider the reasonableness of counsel's actions at the time and in light of all the circumstances, rather than viewing such actions through the benefit of hindsight. *Hart*, 667 S.W.3d at 782. "Counsel's actions are considered deficient only if the court finds, as a matter of law, that 'no reasonable trial strategy could justify trial counsel's acts or

10

omissions, regardless of his or her subjective reasoning.'" *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

Moreover, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness. *Johnson v. State*, 624 S.W.3d 579, 585 (Tex. Crim. App. 2021). Trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Id.* at 586. "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.*

Evidence of one's sexual orientation may be admissible if it is relevant to the issues in the case. *See, e.g.*, *Whitmire v. State*, 183 S.W.3d 522, 528–30 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Woods v. State*, No. 07-22-00208-CR, 2023 WL 4924076, at *1–2 (Tex. App.—Amarillo Aug. 1, 2023, no pet.) (mem. op., not designated for publication). The failure to object to proper questions and admissible testimony is not ineffective assistance. *Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012).

Here, Appellant has failed to show that evidence of his bisexuality, and the explicit content he sent to Garcia, were inadmissible. As set forth above, Garcia explained that her legal name is Fernando J. Garcia, but she goes by "Fern," and uses the pronouns "[s]he, her." As the person who reported the instant offense to police, she gave the background information of sexual relations and intimate familiarity leading up to Appellant's social media confession that he coerces his two-year-old daughter into performing oral sex on him. She told the jury how she met Appellant, had a sexual relationship with him, and they continued talking until August 20, 2020.

The State provided the jury with various messages sent to Garcia by Appellant in support of Garcia's testimony, including the photographs of Appellant's genitals.

Had Appellant's counsel objected to Garcia's testimony and the photographs, the trial court would have had a basis on which it could properly rule upon such objections. The testimony and photographs were admissible contextual background evidence, "once called 'res gestae' of the offense." *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991). The trial court likewise could have admitted the photographs of Appellant's erect penis because they were so "inextricably intertwined" in the sexual conversations preceding Appellant's incriminating statements, such that they were "necessary to complete the story of the alleged offense." *See Worthy v. State*, 312 S.W.3d 34, 39 (Tex. Crim. App. 2010) (internal quotation marks omitted). Appellant's sexuality was indeed related to the circumstances surrounding the charged offense, in that the ongoing sexual partnership with Garcia might invite trust and explain Appellant's reason for confiding in detail his other sexual conduct. It may lend credence to the likelihood of Appellant expressing his intent to let other men perform sexual acts on both him and B.S.M. and "show [Garcia] when [B.S.M.] comes back" for her scheduled visitation. In this light, sending the graphic photograph of B.S.M. would be consistent with Appellant sending other sexually explicit photos—like that of his penis—to Garcia.

We further note that we have found nothing in the record to substantiate Appellant's claim that the State negatively portrayed his sexual preferences in an attempt to cultivate unfair prejudice. Rather, while discussing Garcia's "life choices," the State encouraged the jurors to set aside any potential biases and focus on her credibility.

On this record, trial counsel's failure to object does not support an ineffective assistance claim. *See Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App.

2017).  Appellant's trial counsel could have logically concluded that the contested evidence was admissible, rendering any objections thereto futile.  *See Jimenez*, 364 S.W.3d at 887.  Moreover, we cannot say that trial counsel's conduct was not "so outrageous that no competent attorney would have engaged in it."  *Prine*, 537 S.W.3d at 116–17 (quoting *Goodspeed*, 187 S.W.3d at 392).  Because nothing in the record affirmatively demonstrates that trial counsel's failure to object constituted deficient performance, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

February 8, 2024

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.